# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| United States of America *ex rel.* Brandee White, et al. | : : : | Civil Action No. 1:15cv555 |
| *Plaintiffs*, | : : | Judge Susan J. Dlott |
| v. | : : | Magistrate Judge Karen L. Litkovitz |
| Mobile Care EMS & Transport, Inc., et al. | : : | |
| *Defendants*. | : : | |

## RELATORS' MEMORANDUM IN OPPOSITION TO MOBILE CARE DEFENDANTS' MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT (Doc. 58)

Respectfully submitted,

/s/ Erin M. Campbell
James B. Helmer, Jr. (0002878)
Robert M. Rice (0061803)
Erin M. Campbell (0079083)
James A. Tate (0085319)
HELMER, MARTINS, RICE &
POPHAM CO., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
Email: jhelmer@fcalawfirm.com
rice@fcalawfirm.com
ecampbell@fcalawfirm.com
jtate@fcalawfirm.com

*Trial attorneys for Relators*

I.      INTRODUCTION

Defendant Mobile Care EMS & Transport, Inc. ("Mobile Care") moves to dismiss Relator Brandee White's retaliation claims in this *qui tam* False Claims Act case.

The sole basis for Mobile Care's motion to dismiss is outdated caselaw applying an overruled law. Though Mobile Care improperly mischaracterizes many allegations,[1] applying the proper version of the statute demonstrates that Relators' Second Amended Complaint does plead facts establishing Relator White's 31 U.S.C. § 3730(h) retaliation claim.

In the event Relator White's relation claims are not dismissed, but co-defendant LogistiCare Solutions LLC is dismissed, Mobile Care seeks a change of venue. Such request is contrary to established law, since Mobile Care conducts business in this district and violated the False Claims Act in this district. Mobile Care's Motion to Dismiss should be denied.[2]

---

[1] For example, Mobile Care cites ¶¶122–23 (PageID 457) of the Second Amended Complaint as stating: "Ms. White had constant problems dealing with her colleagues and Mobile Care continued to experience issues with documentation submitted by its employees." Mobile Care EMS & Transport, Inc.'s Motion to Dismiss Relators' Second Amended Complaint, Doc. 58 ("**MTD**"), PageID 505. These paragraphs do not mention "constant problems dealing with colleagues"; they actually plead Mobile Care's continuation of its scheme to bill Government healthcare programs falsely for ambulance services that were not medically necessary, even though Mobile Care demonstrated that it knew what the law required. Relators' Second Amended Complaint, Doc. 53 ("**SAC**"), PageID 457 ¶¶122–23. And these paragraphs mention more than "issues with documentation"; they actually plead Mobile Care's continued filing of false claims. *Id*.

[2] Mobile Care also argues that the Relators' Second Amended Complaint was filed "without consent from Mobile Care or leave from the Court, in direct violation of Fed. R. Civ. P. 15(a)." MTD, PageID 503, *see also id*. at 508. This argument was also the basis of Mobile Care's Motion to Strike (Doc. 57, PageID 497–500) and Mobile Care's Reply in Support of its Motion to Dismiss Relators' First Amended Complaint (Doc. 61, PageID 579).
  In actuality, the filing of the Second Amended Complaint complied with Rule 15(a)(1) because Relators had not previously exhausted their Rule 15(a)(1) opportunity to amend as a matter of course. Relators' First Amended Complaint was filed pursuant to motion and with leave of Court under Fed. R. Civ. P. 15(a)(2). Order, Doc. 5, PageID 125.
  Recognizing its mistake, Mobile Care has now withdrawn its Motion to Strike the Second Amended Complaint. Doc. 63, PageID 583.

## II. RELATOR WHITE'S RETALIATION CLAIMS STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

In considering a motion to dismiss, "a district court must accept as true the plaintiff's well-pleaded facts and draw all reasonable inferences in favor of the complaint." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006) (citation omitted). Unlike the Government's intervened False Claims Act claims, 31 U.S.C. § 3730(h) retaliation claims "are not subject to Rule 9(b)'s heightened particularity requirement. Instead, a plaintiff need only satisfy Rule 8(a)'s notice-pleading standard." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018) (citing Fed. R. Civ. P. 8(a)).

### A. Relator White's 30 U.S.C. § 3730(h) Retaliation Claim Is Well Pled.

To state a claim under the False Claims Act's retaliation protection provision, 31 U.S.C. § 3730(h), "an employee must allege that (1) the employee was engaged in a protected activity; (2) the employer knew that the employee was engaged in a protected activity; and (3) the employer 'discharged or otherwise discriminated against the employee as a result of the protected activity.'" *Bourne v. Provider Servs. Holdings, LLC*, No. 1:12-cv-935, 2019 U.S. Dist. LEXIS 76959, *9, 2019 WL 2010596, *3 (S.D. Ohio May 7, 2019) (Black, J.) (quoting *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003)).

Before 2009, 31 U.S.C. § 3730(h) protection only applied to employees acting in furtherance of a potential False Claims Act suit:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of awful acts done by the employee on behalf of the employee or others **in furtherance of an action under this section**, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (1986) (emphasis added).

In 2009 and 2010, Congress amended this provision, expanding the scope of the protected conduct:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment **because of lawful acts done by the employee**, contractor, agent or associated others **in furtherance of an action under this section *or other efforts to stop 1 or more violations of this subchapter***.

31 U.S.C. § 3730(h)(1) (2010) (emphasis added). The primary House of Representatives Sponsor of the bipartisan 2009 False Claims Act Amendments explained the effect of this expansion to the scope of protected conduct:

> To address the need to widen the scope of protected activity, Section 4(d) of S. 386 provides that Section 3730(h) protects all "lawful acts done" … in furtherance of … other efforts to stop 1 or more violations" of the False Claims Act. This language is intended to make clear that **this subsection protects** not only steps taken in furtherance of a potential or actual qui tam action, but also **steps taken to remedy the misconduct through methods such as internal reporting** to a supervisor or company compliance department **and refusals to participate in the misconduct that leads to the false claims,** whether or not such steps are clearly in furtherance of a potential or actual qui tam action.

155 Cong. Rec. E1300 (2009) (Remarks of Rep. Berman).

### 1. Element 1: Relator White Pleads That She Engaged in Protected Activity.

Relator White pleads that she engaged in protected activity under the 2009/2010 expansion to 3730(h) due to her efforts to stop Mobile Care's violations of the False Claims Act. SAC, PageID 480 ¶235. Such efforts to stop the violations included her compliance efforts, her efforts to train Mobile Care employees to follow Government billing requirements (*id*., PageID 431 ¶¶17–18, PageID 432 ¶20, PageID 456–57 ¶¶117–24), and her insistence that only claims that complied with Government regulations be billed to Medicare (*id*., PageID 459 ¶129).

For example, Relator White contacted CMS for guidance on whether certain Mobile Care patients satisfied Medicare's medical necessity requirements. *Id*., PageID 473 ¶199. CMS told Relator White that such patients did not meet Medicare's medical necessity requirements for ambulance transportation. *Id*. Even though Relator White gave this same direct CMS guidance to Mobile Care, Mobile Care nevertheless continued transporting such patients (including Patient 3, as discussed in the Second Amended Complaint) by ambulance anyway and then still billed Medicare and the Government-funded MyCare Ohio program for the ambulance transports. *Id*., PageID 473–75 ¶¶199–200, 203–04.

Relator White's efforts to report and stop the false claims are the very same type of activities that are now protected by the amended scope of 3730(h). Just as in Representative Berman's remarks quoted above, here Relator White's protected activity included "steps taken to remedy the misconduct through methods such as internal reporting to a supervisor" and "refusals to participate in the misconduct that leads to the false claims." 155 Cong. Rec. E1300 (2009).

Mobile Care acknowledges that the Second Amended Complaint alleges that "Relator White continued to insist that claims … for ambulance transport be billed to Government healthcare programs only if medical necessity both existed and was documented, and also that all other payment requirements were satisfied." MTD, PageID 510 (quoting SAC, PageID ¶129). Mobile Care further concedes that Relator "White alleges that she was terminated for her 'efforts to stop … Mobile Care's continued violations of the False Claims Act by bringing Defendants into compliance with prerequisite requirements for billing Government healthcare programs for ambulance services.'" MTD, PageID 510 (quoting SAC ¶131). Such allegations place Relator White's complaint squarely within the 2009/2010 amendments to the False Claims Act.

Since Relator White alleges she was terminated due to her efforts to stop Mobile Care's False Claims Act violations, Mobile Care's Motion to Dismiss has no basis under the current version of 31 U.S.C. § 3730(h).

### a. Relator White need not satisfy any legislatively-overruled standard for protected activity.

Mobile Care argues that Relator White has not pled protected activity by citing cases decided before the 2009/2010 amendments to 3730(h)—a time when courts limited protected activity to actions in furtherance of an actual (or potential) False Claims Act case. MTD, PageID 509 (*quoting McKenzie v. BellSouth Telecomm, Inc.*, 219 F.3d 508, 516 (6th Cir. 2000)) (arguing that Relator White failed to "sufficiently allege activity with a nexus to a *qui tam* action, or fraud against the United States government").

But Mobile Care ignores that several years ago, the Sixth Circuit foreclosed Mobile Care's position, holding that "pre-amendment case law holding that activity is protected only if it is in furtherance of a potential or actual *qui tam* action is no longer applicable." *Miller v. Abbott Labs.*, 648 Fed. Appx. 555, 560 (6th Cir. 2016). The Fourth Circuit explained why:

> The apparent purpose of the amendment is to untether these newly protected efforts from the need to show that an FCA action is in the offing. Indeed, we and other circuits have recognized that the amended language broadens the scope of protected activity. . . Where Congress expands the scope of activity protected by a statute, we cannot restrict ourselves to applying a narrower old standard that the expansion was intended to eschew.

*United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018) (citing authorities from other federal Courts of Appeals).

Consistent with this change in the law, courts in the Sixth Circuit now hold that activity just like Relator White's training and compliance efforts, or her insistence on only billing compliant claims, constitutes protected conduct. *Bourne*, 2019 U.S. Dist. LEXIS 76959 at *10–

5

11, 2019 WL 2010596 at *4 (identifying irregular billing practices, imposing discipline on staff with noncompliant billing, and initiating procedures to prevent medically unnecessary care were all protected activities); *Tibor v. Michigan Orthopaedic Inst.*, 72 F. Supp. 3d 750, 762 (E.D. Mich. 2014) (plaintiff's allegations that she informed a defendant of her concern that signing a contract would violate the Stark Law were sufficient to plead engaging in protected activity); *United States ex rel. Elliott v. Brickman Grp. Ltd.*, LLC, No. 1:10-cv-392, 2011 U.S. Dist. LEXIS 165842, *38, 2014 WL 12787978, *14 (S.D. Ohio Aug. 25, 2011) (Barrett, J.) (telling a defendant's agents about fraudulent billing practices, which triggered an investigation, was protected activity). And so, under the plain language of the statute, Sixth Circuit authority, numerous district court holdings, as well as what is actually pled, Relator White sufficiently alleges that she engaged in protected activity.

### b. Employees with compliance-related job duties are protected without having to meet *Yuhasz*'s higher standard for compliance employees.

Again citing cases decided before the 2009/2010 amendments to 3730(h), Mobile Care argues that because Relator White's job duty was compliance, her attempts to do her job do "not constitute a protected activity in furtherance of an action under the FCA." MTD, PageID 510 (citing, *inter alia*, *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 567–68 (6th Cir. 2003)). In this 2003 *Yuhasz* decision, the Sixth Circuit held that an employee who raised concerns about False Claims Act liability did so within the scope of his job duties, and thus did not put the employer on notice that the employee was "pursuing an FCA case when it discharged him." *Yuhasz*, 341 F.3d at 567.

Courts in this circuit have held that following the 2009/2010 amendments, this holding from *Yuhasz* and other similar pre-amendment cases are no longer good law:

> *Yuhasz* no longer appears to be correct in light of the [FCA's 2009] amendment . . . . [T]he FCA no longer requires that conduct be "in furtherance of an action under this section" to be protected. Rather, the FCA protects any "effort to stop 1 or more violations of this subsection." 31 U.S.C. 3730(h)(1). . . . If an employee does not need to take steps clearly in furtherance of a potential or actual *qui tam* action to engage in protected activity, the employee, even if charged with investigating potential fraud, also does not need to "make clear their intentions of bringing or assisting in an FCA action," *Yuhasz*, 341 F.3d at 568, to satisfy the notice requirement. . . . <u>By reporting [his/]her concerns directly to [his/her supervisor], [a] Plaintiff satisfie[s] the notice element of [his/]her . . . case</u>.

*Bourne*, 2019 U.S. Dist. LEXIS 76959 at *11–12, 2019 WL 2010596 at *5 (S.D. Ohio May 7, 2019) (quoting *Mikhaeil*, 2015 WL 778179 at *9 and citing *Jones-McNamara v. Holzer Health Sys.*, 2014 U.S. Dist. LEXIS 58674, 2014 WL 1671495, *4 (S.D. Ohio Apr. 28, 2014)) (emphasis and alteration added by the *Bourne* court).

Thus, employees who take action to stop False Claims Act violations are now protected from retaliation by 31 U.S.C. § 3730(h), regardless of whether stopping the violations was within the scope of their job duties. Mobile Care cites no cases to the contrary.

        **c.**         **An employee's belief that false claims were submitted is not made unreasonable when the employee has job responsibilities related to compliance.**

Mobile Care nowhere acknowledges that *Yuhasz* has been effectively overruled by the False Claims Act amendments. Nor does Mobile Care cite to *Miller* or any of the numerous other cases for that proposition. Instead, Mobile Care very carefully attempts to make it seem as if there is still a heightened *Yuhasz* showing for compliance employees by citing a single post-amendment Sixth Circuit case for a proposition of law not found in or supported by that decision. Mobile Care cites *Jones-McNamara v. Holzer Health Sys.*, 630 Fed. Appx. 394, 403 (6th Cir. 2015) for the proposition that because "Ms. White was specifically hired to further compliance-related initiatives, Relators have failed to sufficiently allege that there was an objectively reasonable basis upon which Ms. White could have concluded that Mobile Care was engaged in

7

a violation under the FCA during the time she was employed with Mobile Care." MTD, PageID 510–11. Mobile Care has overstated the holding in this case.

*Jones-McNamara* was not decided on a motion to dismiss. Rather, at the summary judgment stage, the Sixth Circuit held that there must be sufficient evidence that an employee's belief that she was stopping False Claims Act violations was reasonable. *Jones-McNamara*, 630 Fed. Appx. at 399–400. The Sixth Circuit did hold or even suggest in *Jones-McNamara* anything remotely similar to what Mobile Care argues here, that having compliance-related job duties means that Relator White's conclusion that Mobile Care was violating the False Claims Act was "not objectively reasonable."

In actuality, the Sixth Circuit had no trouble finding that *Jones-McNamara* plaintiff's complaints "at least superficially constitute protected activity"—even though the plaintiff was a Vice President for Corporate Compliance. *Jones-McNamara*, 630 Fed. Appx. at 395, 399. The Sixth Circuit only concluded that summary judgment should be granted on the protected activity element because the evidence was insufficient to prove to a jury that the plaintiff reasonably believed that the defendants' claims were false. *Id*. at 402–04. *Jones-McNamara* was about the sufficiency of evidence, not a categorical exclusion of compliance personnel from the ambit of the False Claims Act's retaliation protection provision.

Here, the well-pled allegations show that Relator White's belief that Mobile Care's claims were false was objectively reasonable. The Second Amended Complaint pleads that Mobile Care submitted false claims for payment for services that were not medically necessary or did not meet billing requirements for Government healthcare programs, like Medicare. Mobile Care's claims for payment to Government healthcare programs for services that lack medical necessity can violate the False Claims Act. *United States ex rel. Riley v. St. Luke's*

8

*Episcopal Hosp.*, 355 F.3d 370, 376 & n.6 (5th Cir. 2004); *see also Dep't of Human Servs. v. Holmes*, No. 99-5056, 2000 U.S. App. LEXIS 27669, *2 (6th Cir. Oct. 27, 2000).

### 2. Element 2 - Relator White Pleads that Mobile Care Knew She Was Engaged in Protected Activity.

The Second Amended Complaint pleads that Mobile Care reasonably knew that Relator White was engaged in protected activity. Mobile Care knew of its own business practice of submitting claims for payment to Government healthcare programs. SAC, PageID 480 ¶236. Relator White informed Mobile Care regularly that these claims were not in compliance with Government health programs. *Id.*, PageID 480 ¶236, PageID 456–59 ¶¶117–24, 129. Mobile Care knew its claims were not in compliance—given the admissions of Mobile Care's owner (Joe Wallace) and director (Eric McAllister) that they would not operate with 100% compliance while recognizing that noncompliance could result in a disgruntled employee bringing a False Claims Act case.[3] *Id.*, PageID 480 ¶236, PageID 457–59 ¶¶125–28. The Second Amended Complaint even pleads specific example of false claims that Mobile Care submitted after Relator White told Mobile Care that CMS itself said that these patients did not meet medical necessity requirements. SAC, PageID 472–75 ¶¶195–204.

---

[3] In moving to dismiss the Government's Complaint, Mobile Care argued that these statements are taken out of context and that the full email string shows no "evidence of some master scheme" and is just a discussion about unnecessary documentation details. Mobile Care's Motion to Dismiss the United States' Complaint, Doc. 51, PageID 391–94. Despite Mobile Care's attempts to spin these emails, they unambiguously direct "85-90% compliance regarding billing." Doc. 51-1, PageID 406, *see also id.*, 407, 408. Furthermore, in her April 30, 2015 email, Relator White makes a point that billing regulations may not be met when there are failures in Mobile Care's patient care documentation (called a "PCR"): "Billing needs just a handful of things to be evident … we just need to be able to determine, by the details within their PCR, whether or not that patient met the requirements. . . . Billing simply needs the most basics regulations met to bill. Often what we receive is the equivalent of a potato drawn on a PCR." Doc. 51-1, PageID 405 (emphasis added). By this statement, Relator White warns that documentation compliance failures can lead to billing regulation compliance failures.

Relying again on the legislatively-overruled *Yuhasz*, Mobile Care argues that it did not know that Relator White was engaging in protected activity because she did not alert them that she was "taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the Government" because training and compliance was part of her job. MTD, PageID 511. But as discussed *supra* at pp. 5–7, *Yuhasz* is no longer good law, since 3730(h) now protects any efforts to stop False Claims Act violations.

For this reason, allegations that the employee reported billing irregularities and concerns are sufficient to plead that the defendant was on notice. *Bourne,* 2019 U.S. Dist. LEXIS 76959, at *12–13, 2019 WL 2010596 at *5 (repeatedly alerting supervisors of irregular billing practices was sufficient to the employer on notice); *Mikhaeil*, 2015 U.S. Dist. LEXIS 21682 at *24 (raising concerns about a potential instance of Medicare fraud satisfied the notice element); *Elliott*, 2011 U.S. Dist. LEXIS 165842 at *7, 39, 2014 WL 12787978 at *3, 14 (informing two managers of fraudulent billing practices, which prompted an investigation, was sufficient to put the defendant on notice).

Thus, by trying to correct Mobile Care's noncompliant billing procedures with training and compliance, by alerting Mobile Care to claims that lack medical necessity and therefore could not truthfully be billed to Medicare, Relator White put Mobile Care on notice of her efforts to stop False Claims Act violations. Mobile Care's director specifically documented his concern that a False Claims Act case like this could result from such non-compliance with the law. SAC, PageID 458 ¶126. The second element is satisfied.

### 3. <u>Element 3</u> - Relator White Pleads that Mobile Care retaliated against her, demoted her, and then eventually terminated her because of her protected activity.

The Second Amended Complaint pleads that due to Relator White's efforts to stop Mobile Care's violations of the False Claims Act, and her insistence that only claims which met Government healthcare program billing requirements were met be submitted for payment, Mobile Care discriminated against Relator White. SAC, PageID 479–80 ¶¶234, 237; *see also id.*, PageID 459 ¶¶129–131. The Second Amended Complaint also pleads causation due to a temporal connection. On April 29 and 30, 2015, Mobile Care acknowledged that noncompliance could subject it to False Claims Act liability and told Relator White that it would not be compliant with billing requirements. SAC, PageID 457–58 ¶¶125–27. At this same time, Mobile Care was well aware of Relator White's ongoing efforts to bring it into compliance with billing regulations. SAC, PageID 456–57 ¶¶117–24.

Nevertheless, a month later, on June 1, 2015 Mobile Care discriminated against Relator White by retroactively and prospectively demoting her—placing her under the supervision of the same director who had instructed that Mobile Care would submit noncompliant claims. SAC, PageID 431 ¶19, PageID 458–59 ¶¶128, 131. Then Mobile Care fired her, offering a $15,000 severance payment if, among other things, Relator White would give up her rights to recover in a False Claims Act suit and return any documents she had. SAC, PageID 459–60 ¶¶131–32.

Pleading causation is not a difficult. In *Bourne*, this Court held that causation for constructive discharge was sufficiently pled when the employer failed to heed the plaintiff's warning, continued the misconduct, and instructed the plaintiff to stay "out of Cincinnati." *Bourne*, 2019 U.S. Dist. LEXIS 76959 at *14–15, 2019 WL 2010596 at *6. Similarly, here Relator White was demoted and fired after Mobile Care decided not to follow Relator White's

11

compliance directives and training and told Relator White that Mobile Care was electing to be noncompliant with billing requirements.

The Sixth Circuit has held that a suspension occurring "roughly one month" after becoming aware of conduct protected by 3730(h) "gives rise to an inference of retaliatory motive." *Thompson v. Quorum Health Res., LLC*, 485 Fed. Appx. 783, 792 (6th Cir. 2012). Likewise, in *Mikhaeil*, the court found that causation was sufficiently alleged when the plaintiff fired shortly after employer learned of protected activity. *Mikhaeil*, 2015 U.S. Dist. LEXIS 21682 at *26. Here, Relator White was demoted on June 1, 2015, only a month after Mobile Care told her that contrary to her compliance and training efforts, it would submit noncompliant claims. SAC, PageID 431 ¶19; PageID 457–59 ¶¶125–28. Both Relator White's demotion and Mobile Care's policy to be noncompliant with Government billing requirements were announced to all Mobile Care billing and collection staff during the same June 1, 2015 meeting. SAC, PageID 458–59 ¶128.

And in *Elliott*, the court found that causation was alleged when the plaintiff's manager (who knew of the employee's complaints of fraudulent billing practices) threatened the plaintiff, noting that like discharge and demotion, threats are also proscribed conduct under 3730(h)(1). *Elliot*, 2011 U.S. Dist. LEXIS 165842 at *39–41, 2014 WL 12787978 at *14. Here, Mobile Care and its owner knew of Relator White's protected conduct, but demoted and then fired her anyway. SAC, PageID 458–59 ¶¶128–32.

Mobile Care argues without citation that it is unreasonable to conclude that this causation element is pled because "[i]t defies reason to conclude" that Relator White would be fired for doing the job she was hired to do. MTD, PageID 513. But the Second Amended Complaint explains why Relator White was fired for doing her job, alleging that after Relator White began

12

her training and compliance efforts, "Mobile Care began to lose money due to a reduction in billings." SAC, PageID 457 ¶124; PageID 459 ¶129. So Relator did explicitly plead retaliatory motive.

Relator White has satisfied her pleading obligations under 31 U.S.C. § 3730(h)(1). Mobile Care's attempts to argue otherwise by reliance on legislatively-overruled case law should be rejected.

### B. Relator White's Pendent State Law R.C. 4113.52 Claim Is Well Pled.

Mobile Care moves to dismiss Relator White's R.C. 4113.52 whistleblower protection claim on grounds that this claim is based on allegations that Mobile Care violated the False Claim Act, and so if the Court agrees with Mobile Care that the Government's Complaint in Intervention did not plead a valid False Claims Act case, then Relator White's R.C. 4113.52 claim should be dismissed. MTD, PageID 514. Since Mobile Care identifies no other reason this claim should be dismissed, if the Court finds that the Government's Complaint should stand, then Relator White's R.C. 4113.52 claim should proceed as well.

But if the Court dismissed the Government's Complaint, Relator White's R.C. 4113.52 claim should not be dismissed. The R.C. 4113.52 claim is also premised on Mobile Care's failure to abide by the billing regulations with which it was required to comply. SAC, PageID 481–82 ¶¶241, 247; *see also id.*, PageID 435–55 ¶¶35–114. And so Relator White's R.C. 4113.52 claim can proceed on this independent basis if the Government's Compliant in Intervention is dismissed.

### C. Relator White's Pendent State Law Public Policy Tort Claim Is Well Pled.

Mobile Care moves to dismiss Relator White's public policy tort claim on grounds that it is based on an allegation that Mobile Care violated the False Claim Act, and so this tort claim

13

should be dismissed if the Court agrees with Mobile Care that the Government's Complaint in Intervention is found to not plead a valid False Claims Act case. MTD, PageID 514–15. Since Mobile Care identifies no other reason this claim should be dismissed, if the Court finds that the Government's Complaint should stand, then Relator White's public policy tort claim should proceed as well.

In addition to the False Claims Act violations, Relator White's public policy tort claim is also premised on several other statutes, including R.C. 2921.13(A)(3), (A)(4), (A)(9), (A)(11) and 18 U.S.C. § 287, which all prohibit false statements; and R.C. 4113.52(A)(3) and 31 U.S.C. § 3730(h), which both prohibit retaliation. SAC, PageID 484–85 ¶¶255–59. Even if the Court dismissed the Government's Complaint, Relator White's R.C. 4113.52 claim should not be dismissed.

Mobile Care further argues that *Yuhasz* supports dismissal of the public policy tort claim. MTD, PageID 515. In *Yuhasz*, the Sixth Circuit dismissed the public policy tort claim after finding that the plaintiff failed to state a claim for either a False Claims Act violation, a 3730(h) retaliation claim, or the Federal Acquisition Regulations. *Yuhasz*, 341 F.3d at 568–59. By contrast, here the False Claims Act violations are properly pled in the Government's complaint, the 3730(h) claim is properly pled, and Mobile Care does not contest that Relator White's complaint sufficiently alleges public policy tort violation based on the other pled statutes and regulations.

### III. VENUE IS PROPER IN THE SOUTHERN DISTRICT OF OHIO.

Mobile Care argues Relators have not adequately pled venue and so their Complaint must be dismissed under Rule 12(b)(1). MTD, PageID 515–17.

The False Claims Act provides that "an action under section 3730 may be brought in any

district in which the defendant or, in the case of multiple defendants, **any one defendant** can be found, resides, **transacts business, or in which any act proscribed by section 3729 occurred**." 31 U.S.C. § 3732(a) (emphasis added). Under this provision, "a False Claims Action [can] take place in any judicial district where the defendant transacts business." *United States ex rel. Grand v. Northrop Corp.*, 811 F. Supp. 330, 331–32 (S.D. Ohio 1992) (Spiegel, J.).

Venue is proper in the Southern District of Ohio because Mobile Care both transacts business in this district and committed acts proscribed by the False Claims Act in this District.

Relators plead several facts supporting their assertion that Mobile Care transacts business in this district. SAC, PageID 430 ¶15. Mobile Care generally admits such facts are pled, and merely argues that these facts are too general to establish venue. MTD, PageID 516. In reality, these facts sufficiently explain how Mobile Care conducts business in this district.

First, Relators allege that Mobile Care transported patients to Columbus, Springfield, and Dayton, which are all in this district. SAC, PageID 430 ¶15. Mobile Care does not deny that this is true.

Second, Relators allege that Mobile Care transacts business in this district by submitting claims for payment to the Ohio Medicaid program. *Id*. Ohio Medicaid is located in this District at 50 W Town St #400, Columbus, OH 43215. SAC, PageID 439 ¶58. Furthermore, Relators allege that Mobile Care, as an Ohio Medicaid Provider, has a contractual agreement with Ohio Medicaid by which Mobile Care provides services to Ohio Medicaid beneficiaries, and accepts payment for those services. SAC, PageID 438–40 ¶¶53–64. Mobile Care denies none of this either.

Third, Relators allege that Mobile Care submitted claims to the MyCare Ohio program. SAC, PageID 430 ¶15. Aetna, who manages a MyCare Ohio plan, has a headquarters in this

15

district for its plan at 7400 W. Campus Rd. New Albany, OH 43054-8725. SAC, PageID 465 ¶157. Furthermore, Relators allege that Mobile Care, as an Aetna MyCare Ohio plan provider, has a contractual agreement with Aetna's broker, defendant LogistiCare Solutions, LLC, by which Mobile Care provides services to Aetna's dual-eligible Medicare and Medicaid beneficiaries, and accepts payment for those services. SAC, PageID 440–41 ¶¶65–70; PageID 464–65, ¶¶154–61; *see also* PageID 472–75, ¶¶195–204; PageID 476–78, ¶¶212–23). Nor does Mobile Care deny this.

Even when the defendant is located elsewhere, so long as business is transacted in the forum district, venue is appropriate. *Grand*, 811 F. Supp. at 331 ("We are satisfied that this case is properly venued here, because Northrop transacts business in this judicial district. In its motion, Northrop concedes that it 'enters into agreements whereby some of its systems, equipment and machinery may be utilized by the United States Air Force at Wright Patterson Air Force Base in Dayton, Ohio.'"). Thus, venue is proper in this district because Mobile Care conducts business in this district.

Mobile Care has also committed acts proscribed by the False Claims Act in this District, which also makes venue proper here. 31 U.S.C. § 3732(a). Relators alleged that Mobile Care violated the False Claims Act by submitting false claims to Ohio Medicaid and to the Aetna MyCare Ohio plan, which are both located in this district. SAC, PageID 426 ¶1, PageID 439 ¶58, PageID 465 ¶157; *see also id.*, PageID 438–41 ¶¶53–70, PageID 453–56 ¶¶106–17; PageID 464–68 ¶¶154–76, PageID 472–78 ¶¶195–204, 212–23. These false claims remain relevant as part of the underlying basis of Relator White's personal employment claims (the 31 U.S.C. § 3730(h) claim, the R.C. 4113.52 claim, and the public policy tort claim). Thus, Mobile Care is

16

alleged to have committed acts proscribed by the False Claims Act in this district.[4]

Even when defendant is located elsewhere, venue is proper in a forum district if the defendant nevertheless submits false claims for payment to a program in that district. *See United States v. Safeway, Inc.*, No. 11-3406, 2016 U.S. Dist. LEXIS 165567, *9, 2016 WL 7017231, *3 (C.D. Ill. Nov. 30, 2016) (finding venue was proper under the plain language of the statute when defendant's claims were sent to and processed by Illinois Medicaid in the forum district).

Finally, there is no need for the Court to reach Mobile Care's venue argument unless it dismisses co-defendant LogistiCare pursuant to its separate Motion to Dismiss (Doc. 59). Mobile Care does not deny that venue is currently proper under § 3732(a) and would remain proper unless co-defendant LogistiCare is dismissed.[5]

Mobile Care's Motion to Dismiss for improper venue should be denied.

---

[4] Though the Government is only pursuing Mobile Care's false claims to Medicare Part B, Relators further allege that Mobile Care violated the False Claims Act by submitting false claims for payment to the federally-funded Medicaid Program and MyCare Ohio plan. No actual False Claims Act case need be proven to recover under a 31 U.S.C. § 3730(h) whistleblower claims. *Jones-McNamara*, 630 Fed. Appx at 399 ("the statutory amendment removes a plaintiff's requirement that protected conduct could lead to a viable FCA action").

[5] If LogistiCare is dismissed and the Court finds no facts that support venue as to Mobile Care in this District for some reason, dismissal is still unnecessary. In that event, Relators would request transfer in lieu of dismissal pursuant to 28 U.S.C. § 1406(a). 14D Wright & Miller, Federal Practice & Procedure § 3827 (4th ed. 2015) ("In most cases of improper venue, the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation."); s*ee also Thornton v. Walter*, 774 F.2d 1164, No. 84-3817, 1985 U.S. App. LEXIS 14079, *4, 1985 WL 13711, *2 (6th Cir. Sep. 17, 1985) ("It is clear that 'where the motion asks only that the suit be dismissed, the court *may* properly, *sua sponte*, order it transferred.'") (quotation omitted, emphasis in original). This is particularly true when venue is admittedly proper now, as acknowledged by Mobile Care. The expiration of the three year-long statute of limitations on Relator White's 31 U.S.C. § 3730(h) claim also weighs in favor of transfer in lieu of dismissal. 31 U.S.C. § 3730(h)(3); *see Stone v. Twiddy & Co. of Duck, Inc.*, 1:10CV591, 2012 U.S. Dist. LEXIS 104738, *17–19, 2012 WL 3064103, *6–7 (S.D. Ohio July 27, 2012) (Barrett, J.).

**IV. CONCLUSION**

Relator Brandee White turned down a sizeable severance payment to bring her knowledge and documents to the Government in this False Claims Act case along with her co-relators. She is now committed to finishing what she started with her co-Relators. But she should be fairly compensated as allowed by law for the retaliation she suffered. Mobile Care's Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Erin M. Campbell
James B. Helmer, Jr. (0002878)
Robert M. Rice (0061803)
Erin M. Campbell (0079083)
James A. Tate (0085319)
HELMER, MARTINS, RICE &
POPHAM CO., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
Email: jhelmer@fcalawfirm.com
rice@fcalawfirm.com
ecampbell@fcalawfirm.com
jtate@fcalawfirm.com

*Trial attorneys for Relators*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 14, 2019, a copy of the foregoing was filed electronically with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to all counsel of record to this action.

s/ Erin M. Campbell